UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                    Case No. 09-CR-107-C

ERIC KOENIG,

    Defendant.

**DEFENDANT'S RESPONSE TO GOVERNMENT'S
SENTENCING MEMORANDUM**

___

Eric D. Koenig, by counsel, submits the following in response to the government's sentencing memorandum filed on January 21, 2010. Mr. Koenig's sentencing is currently scheduled for Tuesday, February 16, 2010 at 1:00 p.m. in the above referenced matter.

In anticipation of sentencing, the government has filed several documents from Mr. Koenig's prior convictions for aggravated assault and burglary to a dwelling. Specifically, the information, judgments, sentences, minute sheets, announcement of no information, and acknowledgment of plea and waiver of rights.

The Florida statute in which Mr. Koenig was convicted is Florida Criminal Statute §784.021. However the Florida statutes define "aggravated assault" is an assault as either:

(a) with a deadly weapon without intent to kill or

(b) with an intent to commit a felony

In determining whether a prior conviction counts, the Court may only "look to the fact of conviction and the statutory definition of the prior offense . . . that is, to consider whether the elements of the offense are of the type that would justify its inclusion within the residual provision without inquiring into the specific conduct of this particular offender." *United States v. Woods,* 576 F. 3d 400 at 403 (7th Cir. 2009). When the statute encompasses multiple categories of offense conduct, some of which would constitute a violent felony, the Court may only examine documents to determine which part of the statute the defendant violated. *Id.* at 404. The review of documents is for the sole purpose of determining of which section of the statute the defendant had been convicted, not in the manner in which the offense was committed. I submit that of the documents produced by the government, it is not clear which subsection of the statute Mr. Koenig was convicted. The documents produced by the government in support of its contention that paragraph 69 should count toward Mr. Koenig's possible armed career criminal classification, it is clear he was convicted of the

aggravated assault statute, but it is not clear which subsection he was convicted of. The judgment of conviction indicates that he pled guilty to Count I, aggravated assault in violation of Florida state statute §784.021. Due to the statute having more than one subsection, from the face of the document, it is not clear which subsection he pled guilty to. (Gov't filing page 305) Therefore, the offense cannot be considered a predicate for Armed Career Criminal classification.

The documents submitted by the government also do not provide any insight as to what facts were admitted by the defendant during a change of plea colloquy. While he pled guilty to an aggravated assault, it is not clear from the documents provided what the factual basis for the plea was. The document was altered to reflect "delete" over the word rifle, which presumably was made by the judge. It is unknown what facts Mr. Koenig admitted to at the time of his plea to determine which subsection of the statute he pled guilty to. (Gov't filing page 309) Therefore, this conviction cannot count toward Mr. Koenig's possible Armed Career Criminal classification.

As the Supreme Court held in *United States v. Shepard,* 544 U.S. 13, 125 S.Ct. 1254 (2005):

> [The phrase a]dmitted elements of the generic offense is limited to the terms of the charging document, the terms of a plea agreement or transcript of a colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable record of this information.

*Id.* at 1263. Due to the modifications to the charging documents, it is unclear what facts Mr. Koenig admitted as the basis for his guilty plea. Therefore, the record does not satisfy this requirement for either paragraph 67 or 69.

*Response to Government's Objections*

The government seeks a two level enhancement for reckless endangerment during flight from law enforcement. The defendant objects to the consideration of this possible enhancement. As support for this enhancement, the government submitted police reports written by Chief Deputy Paul Gunness, Deputy Mark Provost, and Deputy Travis Holbrook. Chief Deputy Gunness describes the pursuit of Ms. Berenz as:

> "The suspect vehicle went westbound on 370 Avenue from Amy Chapel, immediately turned northbound on 990th Street. We now had our red/blue emergency lights and siren operating and began to request assistance from other officers as we were now chasing the suspect vehicle northbound on 990th Street. The vehicle was traveling toward Doug Lawrence's residence, which is located on the north end of 990th Street in the Elk Lake area. On some of the curves we did actually lose sight of the vehicle but upon coming around the curve and being on the short straight -a- ways, we gained sight of the vehicle. Just prior to arriving at the Lawrence home,

> there was a very sharp curve. From slowing down on the curve, we lost sight of the vehicle but coming into the Lawrence driveway was dust in the air as if the vehicle had gone into the driveway fast."

(Gov't filing page 286-87)

The guideline requires:

> the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer.

U.S.S.G §3C1.2

The application notes define reckless as "conduct was at least reckless and includes any higher level of culpability." U.S.S.G. §3C1.2, Application Note 2. Furthermore, under this section the defendant must be accountable for his own conduct and for the conduct he aided, abetted, counseled, commanded, induced, procured or willfully caused. Application Note 5.

Nothing supports a finding that Mr. Koenig aided, abetted, counseled, commanded, induced, procured or willfully caused Ms. Berenz to engage in the flight from law enforcement after the commission of the bank robbery. The guideline contemplates egregious conduct, *to wit*; (defendant put his jeep into reverse, jumped it onto the sidewalk and sped the wrong way up the street) *United States v. Williams,* 254 F. 3d 44 (2nd Cir. 2001); (short high speed chase through residential area involved reckless endangerment) *United States v. Jimenez,*

323 F. 3d 320 (5th Cir. 2003); (high speed chase through residential area, crossing an intersection through oncoming cross traffic) *United States v. Cook,* 356 F. 3d 913 (8th Cir. 2004); (the chase ended when the stolen vehicle drove through a ditch, struck an embankment, traveled briefly on a west bound interstate highway, and spun out on the east bound shoulder of the highway) *United States v. Harper,* 466 F. 3d 634 (8th Cir. 2006); (defendant traveled through a residential neighborhood at a speed up to 50 miles per hour, hit a police car, ran over an officers foot and collided with another car on a residential street) *United States v. Thomas,* 294 F. 3d 899 (7th Cir. 2002)

In reviewing the materials submitted by the government, there is nothing that evidences a high rate of speed, the reports of the officers merely indicate that the driver of the vehicle accelerated upon seeing law enforcement. Mr. Koenig was not the driver of the vehicle. The government may argue that they saw the male passenger articulate what law enforcement believed to be "Go Go Go" however, it is just as feasible that the male passenger was telling Ms. Berenz "No No No." This does not support their contention that Mr. Koenig was commanding her to flee law enforcement.

The area in which Ms. Berenz was driving is only semi residential, which one could infer that there would not be pedestrians put in any danger as a result of the pursuit due to the area in which Ms. Berenz was driving.

Furthermore, the officers who participated in the pursuit were experienced officers who have likely been trained in defensive driving tactics and would be able to negotiate the road properly without any risk to themselves or others. There was nothing about the weather or road conditions that would have affected law enforcement's pursuit as well. Ms. Berenz did not collide with a police car, did not hit another vehicle, did not run over a police officer's foot. She merely drove two miles back to her uncle's house. Therefore, the Court should not find nor consider that Mr. Koenig engaged in reckless endangerment during flight in determining his sentence.

Dated at Madison, Wisconsin this 12th day of February, 2010.

> Respectfully submitted,
>
> Eric D. Koenig, Defendant
>
> */s/ Erika L. Bierma*
> Erika L. Bierma

FEDERAL DEFENDER SERVICES
 OF WISCONSIN, INC.
222 West Washington Avenue, Suite 300
Madison, Wisconsin 53703
Tel: 608-260-9900
Fax: 608-260-9901
erika_bierma@fd.org

**Certificate of Service**

  I hereby certify that I caused a true and correct copy of the foregoing to be served via the Court's CM/ECF system to Assistant United States Attorney Daniel J. Graber, this 12th day of February, 2010.

            */s/ Erika L. Bierma*
            Erika L. Bierma